# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. '21 MJ04271
Gray Cricket LG Cellular Phone )
Seized as FP&F No. 2022565400000901 Line Item 0002 )
("Target Device 1") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-1, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code § 1324 | Transportation Of Illegal Aliens (a)(1)(A)(ii) |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Ruben Castaneda, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ruben Castaneda, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 10/22/2021

*Judge's signature*

City and state: San Diego, California    HON. KAREN S. CRAWFORD, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Ruben Castaneda, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> Gray Cricket LG Cellular phone
> Seized as FP&F No. 2022565400000901 Item 0002
> **("Target Device 1")**
>
> Gray Samsung Galaxy Cell Phone
> Seized as FP&F No. 2022565400000902 Item 0002
> **("Target Device 2")**

the **Target Devices**, as further described in Attachment A-1 and A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrants related to the investigation and prosecution of Emelin Zamara-FELIX, Montserrat FELIX and Jeffrey Alexis MELLADO-Zamora for transporting and moving illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

1

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2011 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for ten years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern

District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On October 20, 2021, Border Patrol Agents F. Hurtado and Border Patrol Agent E. Ortiz were conducting assigned duties in the Chula Vista Border Patrol Station's area of responsibility. At approximately 6:12 AM, Agent Ortiz observed a black sports utility vehicle make a U-turn on Alta Road and continue towards the parking lot of the East Mesa Juvenile Detention Center. Agent Hurtado was parked in the Juvenile Detention Center parking lot when he observed a white Jeep and a black Jeep drive into the parking lot followed by Agent Ortiz. Approximately two minutes later, both vehicles left the parking lot and traveled south on Alta Road, Agent Hurtado and Agent Ortiz followed both vehicles. Agents were than alerted to a seismic intrusion device activation in the area of the detention center.

12. At approximately 6:16 AM, Agent Hurtado observed the white Jeep idled on Alta Road, when several subjects ran out of the bushes and enter the rear passenger compartment of the white jeep. The black Jeep was parked next to the white Jeep with its headlights turned off. When both vehicles drove away, Agents observed one subject still attempting to enter the white jeep as the vehicle was in motion. This subject, later identified as material witness, Victor DE JESUS-Gonzalez, was left behind in the middle of the road. Agent Ortiz stopped in the middle of the road and DE JESUS-Gonzalez entered her vehicle. Agent Ortiz identified herself as a Border Patrol Agent and conducted an immigration inspection. DE JESUS-Gonzalez stated that he is a citizen of Mexico without any immigration documents that would allow him to enter or remain in the United States legally. At approximately 6:17 AM, Agent Ortiz placed DE JESUS-Gonzalez under arrest.

13. As the two vehicles drove south on Alta Road, Agent Hurtado followed them closely. The white Jeep than began to accelerate, the black jeep driving behind the white jeep began to reduce its speed, thus creating distance between the white Jeep and Agent

5

Hurtado, who was stuck behind the black jeep. When Agent Hurtado was finally able to circumvent the black Jeep, he made up the distance between him and the white Jeep. Border Patrol Agent M. Menocal responded to assist Agent Hurtado and attempted a vehicle stop on the black Jeep, which was still driving with its headlights off. t approximately 6:20 AM, the driver of the black Jeep, later identified as defendant, Jeffrey Alexis MELLADO-Zamora, yielded. Agent Hurtado observed the white jeep speed through turns and run through red lights on intersections, then he observed the white Jeep enter a construction site and violently bounce up and down as it crashed into rebar and a concrete barrier.

14. Agent Hurtado along with other agents extracted the occupants of the vehicle. Agent Hurtado identified himself as a Border Patrol Agent to the back seat passengers of the vehicle and conducted an immigration inspection. Both subjects, later identified as material witnesses, Miguel DE JESUS-Hernandez and David DE JESUS-Hernandez, stated they are citizens of Mexico without any immigration documents that would allow them to enter or remain in the United States legally. At approximately 6:25 AM, Agent Hurtado placed Miguel DE JESUS-Hernandez and David DE JESUS-Hernandez under arrest. At approximately 6:26 AM, Agent Hurtado placed the driver, later identified as defendant, Emelin Zamara FELIX-Castillo, and the front seat passenger, later identified as defendant, Montserrat FELIX, under arrest. This area is approximately one mile north of the United States/Mexico international boundary and one mile east of the Otay Mesa, California, Port of Entry. At approximately 6:26 AM, Agent Menocal placed MELLADO-Zamora under arrest.

15. During arrest, a gray Cricket LG Cellular phone (**Target Device 1**) was in defendant Emelin Zamara FELIX-Castillo's hand. FELIX claimed the phone as hers. In addition, a gray Samsung Galaxy Cellular phone (**Target Device 2**) was recovered from defendant Jeffrey Alexis MELLADO-Zamora's pocket. These devices were subsequently seized.

16.     The defendant Montserrat FELIX was read her Miranda Rights. Montserrat FELIX understood her rights and was willing to speak without an attorney present. Montserrat FELIX stated that at approximately 4:30 AM, Emelin Zamara FELIX-Castillo approached her and asked her if she would accompany her to pick up some people. Montserrat FELIX stated that she let FELIX-Castillo use her phone to make a phone call. Montserrat FELIX stated that the two of them left the house and drove to an area near a detention center. Montserrat FELIX did state she felt nervous because she had an idea they were about to do something illegal. Montserrat FELIX stated that at no time was she offered anything for accompanying FELIX-Castillo. Montserrat FELIX stated several individuals ran to their vehicle, opened the door, and got in. Montserrat FELIX stated that she recognized the black jeep as her cousin Jeffrey's vehicle.

17.     The defendant MELLADO was read his Miranda Rights. MELLADO understood his rights and was willing to speak without an attorney present. MELLADO stated that he was in the area of Otay Mesa because he got lost on his way to work. MELLADO denied any involvement with the white Jeep Commander.

18.     Material witnesses Victor DE JESUS-Gonzalez, Miguel DE JESUS-Hernandez, and David DE JESUS-Hernandez, admitted to being citizens of Mexico illegally present in the United States without any documents that would allow them to enter or remain in the United States legally. Victor DE JESUS-Gonzalez, Miguel DE JESUS-Hernandez, and David DE JESUS-Hernandez, admitted to making smuggling arrangements and agreed to pay approximately $200,000.00 Mexican Pesos each. Victor DE JESUS-Gonzalez, Miguel DE JESUS-Hernandez, and David DE JESUS-Hernandez, stated that the group were receiving instructions to walk towards where a white vehicle would be picking them up. Upon arriving at the predetermined location, and after approximately two hours, the white vehicle arrived and parked near where they were hidden. Via cell phone, they were instructed to run towards the vehicle and upon entering it noticed that the driver and passenger were both female. The driver of the vehicle, in the

Spanish Language told them all to "get in" and to "hurry up." Miguel DE JESUS-Hernandez stated that he initially attempted to enter the vehicle with the others but owing to the fact that he could not fit, and while still holding on to the door handle, the vehicle sped off. Miguel attempted to enter a second vehicle which was being driven by Border Patrol agent E. Ortiz.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendants were using the **Target Devices** to communicate with themselves and others to further the illegal entry of the Material Witnesses, into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on September 20, 2021, through October 20, 2021.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data

contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

22. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

23. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

## CONCLUSION

24. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of an alien smuggling violation of Title 8, United States Code, Sections 1324.

25. Because the **Target Devices** were seized at the time of Emelin Zamara FELIX-Castillo and Jeffrey Alexis MELLADO-Zamora's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **September 20, 2021, through October 20, 2021.**

26. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1 and A-2, seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Ruben Castaneda
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 22nd day of October 2021.

_____
HON. KAREN S. CRAWFORD
United States Magistrate Judge

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

Grey Cricket LG Cellular Phone
Seized as FP&F No. 2022565400000901 Item 002
**("Target Device 1")**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B

### ITEM TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **September 20, 2021, through October 20, 2021**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.